IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

APPA Seafood, Inc., :

    Plaintiff, :

  v. : Case No. 2:12-CV-1095

    :

Obetz Transportation, Inc.,   MAGISTRATE JUDGE KEMP
et al., :
    Defendants.

OPINION AND ORDER

This matter is before the Court on a motion for summary judgment on all counts filed by Defendant Devinder Singh d/b/a McKee Transport ("McKee") (Doc. #42) and a cross-motion for partial summary judgment filed by Plaintiff APPA Seafood, Inc. d/b/a APPA Fine Foods ("APPA") (Doc. #50). For the reasons set forth below, McKee's motion for summary judgment will be granted, and APPA's cross-motion for partial summary judgment will be denied.

I. Background

This is a motor carrier case relating to the shipment of food. APPA, a food distributor, claims that a shipment of chicken was not kept at the proper temperature during transport and, consequently, it had to be destroyed. APPA sued McKee and Obetz Transportation, Inc. ("Obetz") to recover for the loss of the shipment, claiming that they were responsible for the proper shipment of the goods from Denison, Iowa to Corona, California. More specifically, in an amended complaint filed on November 13, 2013, APPA alleges that it engaged Fire & Ice Transport, Inc. ("Fire & Ice") as a motor carrier to transport the chicken and that Fire & Ice brokered the load to McKee, as motor carrier or a surface freight forwarder, without its knowledge. APPA alleges that McKee then "re-brokered the load" to Obetz, as a motor

carrier, again without its knowledge.  (Doc. #39 at ¶18). According to APPA

> The Goods were picked up in good condition on or about May 25, 2012 in Denison, Iowa, at minus ten degrees (-10°) Fahrenheit.  APPA notified the driver that the equipment for his refrigerated trailer, which held the Goods, must be kept at minus ten degrees (-10°) Fahrenheit.  In addition, McKee and Fire & Ice had documents, which they shared with Obetz about APPA's refrigeration requirements.  The driver signed the Bill of Lading (the "BOL") governing the carriage of the Goods on May 25, 2012.  On or about May 29, 2012, the Goods arrived at APPA's facility in Corona, California, at a temperature of 49.1 degrees Fahrenheit.  The Goods were rejected at delivery.

Id. at ¶¶20-23.  APPA claims that damages arising from the lost load are in excess of $100,253.90.

In its amended complaint, APPA brings one claim against both McKee and Obetz and three claims solely against McKee.  APPA does not name Fire & Ice as a defendant in the amended complaint.  In count one, APPA alleges that McKee and Obetz are liable under the Carmack Amendment, 49 U.S.C. §14706, for their failure to deliver the load in good condition.  In count two, APPA alleges that McKee entered into a contract to transport and/or to arrange to transport the goods and that McKee breached its obligations under the contract, resulting in damages.  In count three, APPA alleges that McKee entered into an implied contract to transport the goods and/or to arrange to transport the goods and that McKee breached the implied contract, resulting in damages.  Finally, in count four, APPA asserts a negligence claim against McKee, alleging that it breached its duty to properly transport and/or properly arrange for transport of APPA's goods, which proximately caused APPA to suffer damages.

McKee denies liability and has moved for summary judgment on all of APPA's claims (Doc. #42).  APPA filed a response in opposition to McKee's motion for summary judgment (Doc. #49), in

addition to filing a cross-motion for partial summary judgment on its Carmack Amendment claim against McKee (Doc. #50).  McKee filed a combined reply in its support of its motion and memorandum in opposition to the cross-motion for partial summary judgment (Doc. #54).  Finally, APPA filed a reply in support of its cross-motion for partial summary judgment (Doc. #55).  Thus, the motions have been briefed fully, and they are now ripe for review.

## II. Motion for Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed.R.Civ.P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motions must be decided.

### III. Discussion

The Court first examines APPA's claim arising under the Carmack Amendment.  After doing so, the Court next examines APPA's state law claims for breach of contract, breach of implied contract, and negligence.

#### A. Carmack Amendment Claim

Count one of APPA's amended complaint arises under the Carmack Amendment to the Interstate Commerce Commission Act, 49 U.S.C. §14706, which establishes the obligations of interstate motor carriers.  The Supreme Court has described the Carmack Amendment as follows

> [T]he statute codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.

Missouri Pac. R.R. Co. v. Elmore and Stahl, 377 U.S. 134, 138 (1964)(internal quotations omitted).  A plaintiff sets forth a prima facie case under the Carmack Amendment when it demonstrates delivery of the cargo to the carrier in good condition, arrival of the cargo in damaged condition, and damages. Plough, Inc. v. Mason and Dixon Lines, 630 F.2d 468, 470 (6th Cir. 1980); see also Great West Casualty Co. v. Flandrich, 605 F. Supp. 2d 955, 966 (S.D. Ohio 2009) (setting forth the prima facie elements of a Carmack Amendment claim).  Once the shipper has set forth a prima facie case, "the burden of proof is upon the carrier to show both

4

that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." Id.

In its motion for summary judgment, McKee argues that APPA cannot set forth a prima facie case under the Carmack Amendment because it never accepted custody of the cargo. McKee admits that it entered into a contract with Fire & Ice related to the transport captioned "Freight Forwarder – Contract Carrier – Contract," dated May 25, 2012. However, McKee claims that "shortly later, [it] discovered that its refrigeration equipment was not performing adequately, and it immediately advised . . . Fire & Ice that would not be able to transport the shipment." (Doc. #42 at 5). McKee alleges that it

> advised Fire & Ice that another company named defendant Obetz might have a truck available in the area of Denison, Iowa. [McKee]'s owner, Devinder Singh, knew the owner of defendant Obetz and he contacted defendant Obetz to see if they had availability. Mr. Singh advised Fire & Ice to contact defendant Obetz directly to make arrangements.

Id. at 6. McKee maintains that Devinder Singh did not hire or retain Obetz. Indeed, it claims that "[a]fter putting the two in touch with one another, [Mr. Singh] had no further involvement in the shipment." Id. Based upon these facts, McKee argues that it cannot be liable to APPA under the Carmack Amendment.

In its cross-motion, APPA does not dispute that McKee was unable to transport the load due to a refrigeration unit breakdown. According to APPA, however, liability under the Carmack Amendment extends beyond the motor carrier which actually provides the transportation, and makes any carrier that provides a service related to the transportation liable. In this case, APPA argues that McKee is liable under the Carmack Amendment because it "made the arrangements . . . by making telephone calls, passing along information, and booking the load" to be

5

transported by Obetz.  (Doc. #49 at 4).  Based upon these facts, APPA argues that reasonable minds can find that McKee acted as a motor carrier with respect to APPA's goods.

In response, McKee argues that APPA is "playing fast and loose with the facts" in arguing that McKee arranged for transportation of the cargo.  (Doc. #54 at 2).  According to McKee, it advised Fire & Ice "that it must itself directly secure the services of another motor carrier, which it did both verbally and through the issuance of a bill of lading and exchange of a rate confirmation, neither of which reference [McKee] in any manner whatsoever."  Id.  (internal citations omitted).  McKee further alleges that, consistent with these facts, it did not issue an invoice or receive any compensation.  Consequently, McKee argues that "there can be no serious dispute that the original transportation agreement was terminated and substituted with an entirely new transaction between [APPA], through its agent Fire & Ice and defendant Obetz."  Id.

In reply, APPA argues that the following is without dispute "(1) Defendant McKee contracted to transport APPA's Goods; (2) it was provided all documents for such transport, including the Dispatch Rate/Confirmation Agreement; and (3) when it was unable to transport the Goods, Defendant McKee took action right away and told Fire & Ice that Obetz Transportation could do it." (Doc. #55 at 1-2)(internal quotations omitted).  Consequently, APPA argues that, "[r]eviewing all of the facts and evidence, reasonable minds can only conclude that Defendant McKee provided transportation or service with respect to APPA's Goods, and therefore, it should be held liable under the Carmack Amendment as a matter of law."  Id. at 2 (internal quotations omitted).

Most of the facts relevant to this claim are not in dispute. In particular, there is no dispute that McKee agreed to transport the load but was unable to do so due to a refrigeration equipment

6

failure. There is likewise no dispute that McKee contacted Obetz to inquire as to whether Obetz could transport the load once McKee realized that it was unable to do so. Further, there is no dispute that, thereafter, Fire & Ice issued a written "Dispatch Confirmation/Rate Agreement" to Obetz, and that APPA issued a bill of lading naming Obetz as the motor carrier. The parties do not dispute that Obetz transported the goods, which were rejected upon delivery. The disagreement between APPA and McKee pertains to what involvement, if any, McKee had with the transportation of the goods beyond its initial telephone call to Obetz.

APPA is correct that liability under the Carmack Amendment may extend beyond the carrier which physically transported the goods. Pursuant to the statute, a "motor carrier" is a "person providing motor vehicle transportation for compensation." 49 U.S.C. §13102(14). "Transportation" is defined to include, <u>inter alia</u>, "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." <u>Id.</u> at §13102(23)(B). <u>See, e.g.</u>, <u>Land O'Lakes, Inc. v. Superior Serv. Transp. of Wis., Inc.</u>, 500 F. Supp. 2d 1150, 1155 (E.D. Wisc. 2007) (finding defendant was a "motor carrier" under the Carmack Amendment despite the fact that defendant did not physically transport and goods and arranged for another entity to broker the transport). Thus, McKee did not need to ship the goods in this case in order to be subject to potential liability under the Carmack Amendment.

Merely because McKee may be liable under the Carmack Amendment, however, does not mean that APPA has demonstrated the absence of a genuine issue of material fact as to this claim. Indeed, in this case, the totality of the evidence does not lead to a reasonable inference that McKee could be liable for its

7

actions under the Carmack Amendment.  Mr. Singh testified in his deposition that he called Amir Ullah of Obetz to see if that company would be able to make the transport.  He testified that he instructed Obetz to engage in negotiations with Fire & Ice independent of him, and that McKee had no further involvement.  Consistent with Mr. Singh's contention that McKee had no further involvement, Fire & Ice issued a written "Dispatch Confirmation/Rate Agreement" to Obetz, and APPA issued a bill of lading naming Obetz as the motor carrier.

APPA's offers little evidence that McKee should be subject to liability.  In a footnote in its memorandum in opposition to McKee's motion for summary judgment, APPA states that, in addition to McKee's own Dispatch Rate/Confirmation Agreement with Fire & Ice, "McKee had in its possession, and produced in discovery, another Dispatch Rate/Confirmation Agreement" which "had Defendant Obetz's name instead of defendant McKee."  (Doc. #49 n.1).  APPA also argues that

> [a]fter the Goods were rejected by APPA, the evidence supports that Defendant McKee played a role in moving the Goods to a U.S. Cold Storage Facility in Bakersfield, California – the same city where Defendant McKee is located.  The individual in charge at U.S. Cold Storage Facility is Frank Garcia.  Although Defendant McKee's owner failed to acknowledge any involvement with Plaintiff's load after it was rejected, in discovery, Defendant McKee produced a document from its file that contains a handwritten name 'Frank' next to Defendant McKee's fax number.

Id. at 5.  This evidence alone, in light of all of the other evidence in the record, would not allow a trier of fact reasonably to infer that McKee arranged for the transport of the goods by Obetz and, consequently, that it would be subject to liability under the Carmack Amendment.

Further, the Court has considered the authority cited by APPA in support of its position and finds the cases to be

factually distinguishable from this case.  See, e.g., Land-O-Lakes, Inc., 500 F. Supp. 2d at 1155  (finding Carmack Amendment applicable where, pursuant to a contract, defendant arranged for another party to broker the load to the trucking company which transported the goods); Mach Mold, Inc. v. Clover Assoc. Inc., 383 F. Supp. 2d 1015 (N.D. Ill. 2005) (holding Carmack Amendment was applicable where plaintiff authorized defendant to ship the machine, and that defendant did so by contracting with another party to help); Advantage Freight Network v. Sanchez, No. CV-F-07-827-LJO-SMS, 2008 U.S. Dist. LEXIS 81816 (E.D. Cal. Sept. 10, 2008)(determining that the Carmack Amendment was applicable where defendant agreed to transport the goods and arranged for their transportation through his driver).  As McKee argues, "the cases relied upon by plaintiff are misplaced, as they rely on fact patterns where a motor carrier accepted responsibility for a shipment and simply sub contracted its own work responsibilities – an altogether different situation." (Doc. #54 at 6).  Based on the foregoing, the Court will grant McKee's motion for summary judgment on the Carmack Amendment claim and will deny APPA's cross-motion for partial summary judgment on the same claim.

### B. State Law Claims

The Court now turns to APPA's state law claims for breach of contract, breach of implied contract, and negligence.  In count two of the amended complaint, APPA alleges that "[i]n the event McKee is found not to be a carrier, it should be found to be a broker with respect to the Shipment of Goods." (Doc. #39 at ¶38).  APPA states that it was the intended beneficiary of the contract pertaining to the transport of the goods and, consequently, McKee is liable to it for breaching its obligations as a broker under the contract.  McKee argues that it is entitled to summary judgment on this claim because "not only is there (1) no basis in fact or law to suggest McKee Transport was ever a

9

freight broker, but (2) there was never any contractual relationship or proximate causation, in any event." (Doc. #42 at 11).

In count three of the amended complaint, APPA alleges that McKee is liable to it for breaching its obligations as a broker under an implied contract intended to benefit APPA. In response, McKee argues again that it "clearly never acted in the capacity of a freight broker." Id. at 14. McKee also contends that "this claim is barred as a matter of law by (1) federal preemption, both implied and express, and (2) even if it were not preempted, there is no basis under Ohio law to sustain a claim for breach of implied contract" under the facts presented in this case. Id.

In count four of the amended complaint, APPA alleges that McKee breached its duties as a broker by failing properly to transport and/or arrange for the transportation of the goods. APPA further alleges that McKee's negligence proximately caused the destruction of APPA's goods, resulting in damages believed to be in excess of $100,253.90. McKee again argues that this claim is barred by preemption. Alternatively, McKee contends that, even if this claim is not preempted, it "fails on all essential elements as a matter of law." (Doc. #42 at 18). More specifically, McKee argues that even if it "acted as a broker, then there is still no factual basis upon which to support a common law claim for negligence because [it] cannot be held liable for the negligence of defendant Obetz in failing to maintain the desired temperature." Id.

In its memorandum in opposition to McKee's motion for summary judgment, APPA does not dispute that the Carmack Amendment preempts state law claims that fall within the scope of that statute. However, APPA argues that "if Defendant McKee is deemed a broker, APPA's state law claims fall outside the scope of the Carmack Amendment and, therefore, are not subject to

10

federal preemption." (Doc. #49 at 12). APPA also argues that it has enforceable rights under the contract between Fire & Ice and McKee, despite the fact that it is not named in the contract.

For purposes of resolving McKee's motion for summary judgment, even if the Court assumes for the sake of argument, without deciding, that APPA's claims are not preempted and that APPA had enforceable rights under the contract, McKee would still be entitled to summary judgment on APPA's claims for breach of contract, implied breach of contract, and negligence. Simply stated, APPA fails to set forth facts to support its state law claims for relief. Although Fire & Ice and McKee had a written contract for McKee to transport APPA's goods, the evidence permits only one inference – that those parties mutually agreed to terminate that contract when McKee was unable to perform. Thus, the evidence supports a finding of mutual rescission or abandonment, followed by Fire & Ice's creating a new contract with Obetz. See, e.g., Nebco & Assoc., 23 Cl. Ct. 635, 642 (1991)(observing that parties may mutually agree to rescind a contract by conduct which indicates intent by both parties to abandon the contract)(citing Restatement (Second) of Contracts §283, comment a). Furthermore, the plain language of the contract between Fire & Ice and McKee placed McKee in the position of a carrier, and it did not allow McKee to arrange for transportation of the goods without prior written consent. (Doc. #50, Ex. 2 at ¶12). APPA fails to set forth any argument or evidence suggesting that Fire & Ice provided such written consent. Because the totality of the evidence does not support a reasonable inference that McKee either had a contract to transport the goods which survived the new arrangement made with Obetz or that it owed any duty to APPA which could lead to tort liability, McKee's motion for summary judgment on these claims will be granted.

## IV. Conclusion

For the reasons set forth above, McKee's motion for summary judgment is granted (Doc. #42) and APPA's cross-motion for partial summary judgment is denied (Doc. #50).

IT IS SO ORDERED.

/s/ Terence P. Kemp
United States Magistrate Judge